UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HARMON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>WILLIE NELSON, et al.,<br><br>    Defendants. | Case No. 19-cv-01192-SI<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFF COUNSEL'S MOTION TO WITHDRAW**<br><br>Re: Dkt. Nos. 64, 66 |

Before the Court is defendants' Motion to Dismiss for Failure to Prosecute and Violation of Court Order, Dkt. No. 64, and plaintiff counsel's Motion to Withdraw as Counsel of Record, Dkt. No. 66. On January 12, 2022, the Court held a consolidated hearing on the motions. For the reasons discussed below, the Court **GRANTS IN PART** defendants' motion to dismiss and **GRANTS** plaintiff counsel's motion to withdraw. The case is dismissed without prejudice.

## BACKGROUND

### I.   The lawsuit's origin in state court over six years ago

This lawsuit began in the Superior Court of California in the middle of 2015. Plaintiffs Gary Harmon and ISE Entertainment Corporation[1] sued Kerry Wallum, Willie Nelson, Luck Films, Luck Films LLC, Boulder Music Group LLC, and other unknown defendants for $10,000,000 based on alleged misrepresentations, false promises, and breach of fiduciary duty arising from supposed business ventures between the parties. Dkt. No. 1 at 41-72 (Initial Complaint filed July 17, 2015,

---

[1] Harmon is an officer, director, and shareholder of ISE.

Second Amended Complaint filed Dec. 7, 2018). For example, plaintiffs allege that between 2010 and 2013, defendants invited Harmon and ISE to run a video production company, Luck Films LLC, which would be jointly owned by Harmon, Kerry Wallum, and Willie Nelson, with Nelson providing millions of dollars in financial support. SAC ¶ 18-23. Plaintiffs allege they expended tens of thousands of dollars on films projects believing that they would be reimbursed by defendants, but reimbursement never came. *Id*.

The case progressed slowly. In the first nine months, defendants demurred, plaintiffs amended their complaint, and the first of many plaintiff attorney substitutions took place (a pattern which the Court addresses later). Cazzell Decl., Dkt. 69-1 at 24-29, Ex. B (State Court Docket Sheet). The proceedings otherwise remained fairly quiet for the first 2.5 years of the case. Plaintiffs would later attribute this period of "statis" to an inability to locate and serve Kerry Wallum. Dkt. No. 14 (CMC filed June 10, 2019). It was not until May 2017 that plaintiffs filed an *ex parte* application to effect service by publication on Wallum, which the state court granted. Dkt. 70-1 at 4, 11. Wallum filed his answer in October 2017. But nearly a full year would pass before plaintiffs meaningfully resumed their prosecution of the case.

During the summer of 2018—three and a half years after filing—plaintiffs began serving written discovery on defendants Wallum and Nelson. Dkt. No. 14 at 12 (CMC filed June 10, 2019). Plaintiffs filed two substantive motions in fall 2018: (1) a motion to quash a third-party deposition subpoena served on a non-party, and (2) a motion for leave to file a second amended complaint. Dkt. 69-1 at 19-20. The SAC, filed in December 2018, added a civil RICO claim (for the first time) and introduced a new defendant—Kathy Hardt—who, on March 4, 2019, removed the case to federal court. Dkt. No. 1.

**II.   Harmon goes to prison and discovery stalls**

Three months before Hardt filed her notice of removal, Harmon was convicted of six felony

counts involving fraud and embezzlement in a separate criminal matter. As a result, Harmon was in prison from January 2019 until November 2021—nearly the entire time the case was in federal court.

Despite Harmon's incarceration, the parties held a discovery conference on May 15, 2019. However, the momentum was cut short when plaintiff counsel withdrew in August 2019, citing a "break down of the attorney-client relationship" and nonpayment of attorneys' fees. Dkt. No. 30 (Motion); Dkt. No. 30-2 ¶ 5, 6. As a result, further case management was continued to January 2020. Dkt. No. 31. Plaintiffs' current counsel, Maryann Cazzell, noticed her appearance for Harmon and ISE on January 13, 2020.

The parties exchanged their initial disclosures in the spring of 2020. Dkt. No. 45 at 9. One year later, however, defendants alleged that plaintiffs had still not produced several documents identified in their initial disclosure, including a computation of each category of damages or documentation supporting damages claims. *Id*. Plaintiffs maintained that production was difficult because Harmon had "many of his files with him" in prison, "but is prohibited from sending those to his counsel, or even sharing them with counsel by an in-person [meeting] (which is currently not allowed)." *Id*. Plaintiffs also cited the "perfect storm" brought on by the COVID-19 pandemic that prevented "ongoing meaningful conversations with Mr. Harmon that were needed" for effective advancement of the case. *Id*. at 10.

As a result of plaintiffs' failure to produce the documents identified in the initial discloses, Harmon had still not been deposed by April 2021—nearly six years since the complaint was filed. While a virtual deposition may have been logistically possible (despite Harmon's incarceration and COVID-19), defendants reasonably maintained that "it would not be appropriate to move forward with depositions until Plaintiffs have completed their document production." Dkt. No. 45 at 16.

### III. Plaintiffs fail to comply with a court order

Plaintiffs continued to delay production through 2021, eventually leading to court to enter an order on August 20, 2021 requiring plaintiffs to produce, within 30 days, "1) the documents identified in their initial disclosures, 2) a computation of plaintiffs' damages supported by evidence, and 3) the documents plaintiffs represented they would produce in their responses to defendants' requests for production." Dkt. No. 58. The Court warned plaintiffs "that if the documents are not produced by the deadline stated it will entertain issuing of sanctions including Dismissal of the case due to failure to prosecute." Dkt. No. 59. The Court further remarked that the due date "will not be reset even if [Harmon] is not released from custody." *Id*.

Plaintiffs produced various documents on October 8, 2021, but one day later, counsel submitted declarations explaining that plaintiffs would not be able to fully comply with the Court's order. Dkt. No. 60. For example, a board member of ISE attested that as long as Harmon was incarcerated, plaintiffs would be unable to produce

> the actual computation of PLAINTIFFS' damages, because these records I believe to be solely within GARY HARMON's domain. I understand that GARY HARMON has computer components in storage and potentially may have records on an old cell phone that may contain documents from which those computations can be generated, and/or which are identified in general terms in the PLAINTIFFS' DISCLOSURES. However, in order to be accessed, those computer components and phone require passwords that I do not have and never had.
> \*\*\*
> there were other members of the ISE board that probably had those passwords and may have been able to access any balance of the records to be produced as directed in the ORDER. However, I am personally aware that those former ISE Board Members were threatened by the RICO participants, and as a result of those threats resigned or quit the ISE board, and I no longer have contact information for them.

Dkt. No. 60-2 ¶¶ 4, 5 (filed October 9, 2021).

On October 29, 2021, defendants submitted a detailed account of perceived deficiencies in plaintiff's October 8, 2021 production. For example, defendants stated plaintiffs had yet to produce the evidence identified in the initial disclosures, which would establish

> (1) the existence of a Distribution Agreement between ISE and Once Upon a Dream; (2) an

4

Amended Purchase Agreement for the purchase of Boulder Creek Guitars by Boulder Music Group of California; (3) documentation of an alleged extension of time in which to pay the purchase price for Boulder Creek Guitars; (4) the alleged loans by ISE to Boulder Creek Guitars for operating expenses; (5) unauthorized transfers of money from Boulder Music Group of Nevada to Boulder Music Group of California; (6) Plaintiffs alleged attempts to stop the alleged transfers of money; and (7) Defendants' misappropriation or misuse of ISE's confidential information.

Dkt. No. 61 at 8 (internal citations omitted). Defendants also argued that plaintiffs "failed to provide any form of computation of damages" or "evidence that they suffered damages as a result of: (1) Defendants' alleged interference with contracts; (2) an alleged amendment to or rescission of the purchase agreement between Boulder Creek Guitars and Boulder Music, CA; (3) Boulder Creek Guitars' alleged failure to repay a loan from ISE; (4) unreimbursed production expense related to various film and TV projects and (5) other contractual breaches allegedly committed by Defendants." *Id*. at 9 (internal citations omitted).

Further, defendants argued that plaintiffs failed to produce documents responsive to defendants' requests for production, including: "(1) Bank records for Boulder Creek Guitars; (2) evidence that Mr. Wallum ever purported to act as Mr. Nelson's agent; and (3) evidence of transactions between: (a) Mr. Harmon and Mr. Wallum; (b) ISE and Mr. Wallum; (c) Mr. Harmon and Mr. Nelson; (d) ISE and Mr. Nelson; (e) Boulder Creek Guitars and Mr. Nelson; (f) Mr. Harmon and Ms. Hardt; (g) ISE and Ms. Hardt; and (h) Mr. Harmon and Boulder Music Group of California." *Id*. at 10 (internal citations omitted).

In response to defendants' detailed account of perceived deficiencies, plaintiffs insisted that they "have now produced most of the documents that were required to be produced by the August 20, 2021 Order (and for categories for which Plaintiffs were unable to completely comply, detailed, documented explanations were provided.)." *Id*. The Court has repeatedly recognized the challenges presented by Harmon's incarceration. But Harmon was released from prison around November 3, 2021, Dkt. No. 65 at 3, and as of mid-January 2022, plaintiffs had not produced any additional evidence, including the records and computer components which were allegedly in Harmon's sole

5

possession.

### IV. Pending motions before the court

On November 19, 2021, about two weeks after Harmon was released from prison, defendants filed a motion to dismiss the lawsuit with prejudice for failure to prosecute and for violation of this Court's discovery orders. Dkt. No. 64. Defendants cited the long lifespan of the case and plaintiffs' ongoing inability to comply with discovery obligations and retain a working relationship with its own counsel. On the same day defendants filed their motion to dismiss, plaintiff counsel, Ms. Cazzell, filed a motion to withdraw, citing nonpayment of attorney's fees and the "breakdown of the attorney-client relationship." Dkt. No. 66. If the Court grants Ms. Cazzell's motion, plaintiffs would have cycled through four different lawyers or law firms since the inception of the case:

1. In February 2016, plaintiffs substituted Hopkins & Carley for Terra Law. Dkt. 69-1 at 25.
2. In January 2017, Hopkins & Carley asked to be relieved as counsel due to plaintiffs' nonpayment of fees and a "failure to provide documents and information required for the effective representation of plaintiffs." Dkt. No. 64-1 at 173, Ex. L. Hopkins & Carley resumed their representation of plaintiffs in May 2017. *Id*. at 179, Ex. N.
3. In June 2018, Grellas Shah LLP replaced Hopkins & Carley as plaintiff counsel. Dkt. 69-1 at 22. In August 2019, Grellas Shah LLP moved to withdraw as plaintiff counsel, citing a "break down of the attorney-client relationship" and nonpayment of attorneys' fees. Dkt. Nos. 30, 30-2 ¶ 5, 6.
4. In January 2020, Maryann Cazzell, the plaintiffs' now-current counsel, noticed her appearance for Harmon and ISE. She moved to withdraw a little less than two years later.

Ms. Cazzell agreed to stay on as plaintiffs' counsel through the resolution of the motion to dismiss. The Court held a consolidated hearing for both motions on January 12, 2022.

**LEGAL STANDARD**

**I.     Rule 41(b) motion to dismiss**

Rule 41(b) of the Federal Rules of Civil Procedure authorizes a district court, on motion of a defendant, to dismiss with prejudice an action when the plaintiff "fails to prosecute or to comply with these rules or a court order." "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances." *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986). To determine whether involuntary dismissal under Rule 41(b) is appropriate, the court should weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Id.* at 1423. Importantly, a dismissal "for lack of prosecution must be supported by a showing of unreasonable delay." *Id*.

The Rule 41(b) inquiry permits the court to consider "all the circumstances that were brought to its attention," including the "history of [the] litigation" and "other evidence of delay." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (affirming dismissal where, among other things, plaintiff counsel failed to attend a pretrial conference). No single factor is dispositive. *See, e.g., Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1069 (D. Or. 2014) (denying motion to dismiss because, among other things, the case was only seven months old and the plaintiff diligently responded to all motions), *and Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991) (affirming dismissal where, among other things, plaintiffs "unnecessarily delayed adjudication…for almost two years," "repeatedly failed to respond to correspondence…regarding discovery," and "substituted counsel four times [resulting] in serious delays").

**II.    Motion to withdraw as counsel**

In the Northern District of California, counsel "may not withdraw from an action until relieved by order of the Court after written notice has been provided, reasonably in advance, to the client and to all other parties who have appeared in the case." Civil Local Rule 11-5(a). When counsel's motion to withdraw is not "accompanied by simultaneous appearance of substitute counsel or agreement of the party to appear pro se," then

7

>leave to withdraw may be subject to the condition that papers may continue to be served on counsel for forwarding purposes, unless and until the client appears by other counsel or pro se. When this condition is imposed, counsel must notify the party of this condition. Any filed consent by the party to counsel's withdrawal under these circumstances must include acknowledgment of this condition.

Civil Local Rule 11-5(b).

When deciding the propriety of withdrawal, "courts have looked to the following factors: 1) the reasons why withdrawal is sought; 2) the prejudice withdrawal may cause to other litigants; 3) the harm withdrawal might cause to the administration of justice; and 4) the degree to which withdrawal will delay the resolution of the case." *Canandaigua Wine Co. v. Edwin Moldauer*, 2009 WL 89141, at *1 (E.D. Cal. Jan. 14, 2009). Generally, a "[f]ailure to pay legal fees is a proper ground for withdrawing as counsel," *Vahora v. Valley Diagnostics Lab'y Inc.*, 2018 WL 4292237 at *3 (E.D. Cal. Sept. 7, 2018), as is conduct from the client that "renders it unreasonably difficult for the [attorney] to carry out the employment effectively." *Canandaigua Wine Co.*, 2009 WL 89141 at *1, quoting California Rules of Professional Conduct Rule 3–700(C)(1)(d).

## DISCUSSION

This case has been pending for nearly seven years. Trial is nowhere on the horizon. Plaintiffs continue to delay the proceedings by cycling through attorneys and failing to comply with discovery obligations. The Court has attempted less drastic measures to move the plaintiffs to "meaningful action." *Morris*, 942 F.2d at 652. Thus, as explained further below, dismissal is appropriate based on the five equitable factors articulated in *Henderson*.

Dismissal will be without prejudice to plaintiffs refiling with new counsel (or, in Harmon's case, *pro se*). However, the Court believes—but does not decide—that all claims would be barred by the applicable statutes of limitations.

Finally, the Court will grant plaintiff counsel's motion to withdraw.

### I. Dismissal based on failure to prosecute

A careful analysis of the five equitable five factors articulated in *Henderson* leads the Court

to conclude that plaintiffs have unreasonably delayed their prosecution of this case. *Henderson*, 779 F.2d at 1423 (dismissal "must be supported by a showing of unreasonable delay.").

**A.   Public's interest in expeditious resolution of litigation**. This case was filed nearly seven years ago, and trial remains a distant (if unlikely) possibility. Accordingly, this factor weighs in favor of dismissal. *See Lalau v. City and Cty. of Honolulu*, 938 F. Supp. 2d 1000, 1008 (D. Hawai'i 2015) (dismissing for failure to prosecute a case filed in state court five years prior and removed to federal court two years prior). While the Court recognizes Harmon's incarceration may have caused delays, Harmon was incarcerated only during the most recent three years of the litigation. Since being released from prison in early November, plaintiffs have not shown diligence in moving the case forward by, for example, producing the still-missing documents that would enable defendants to meaningfully depose Harmon.

Further, plaintiffs have been repeatedly unable to pay attorneys' fees and maintain a working relationship with counsel. While occasional (and even repeated) substitutions may be permissible, when a party substitutes counsel four times in the past six years—every time resulting in considerable delays—the Court may find the party's conduct adverse to the public's interest in expeditious resolution of the litigation. *See Morris*, 942 F.2d at 652 (finding it material for dismissal that, "[a]s of the time of this appeal, the [plaintiffs] have substituted counsel four times which has resulted in serious delay.").

**B.   Court's need to manage its docket**. The parties have repeatedly postponed the trial date in this case. In a joint case management statement filed in June 2019, the parties stated that trial was expected in August 2020. Dkt. No 14. In August 2019, the date was pushed to October 2020. Dkt. No. 25. In April 2021, the parties proposed varying dates for trial: defendants proposed September 6, 2022, plaintiffs proposed November 12, 2023. Dkt. No. 48 at 23. And in October 2021, the parties stipulated—not a defined date—but that trial will begin "18 months from [plaintiff's] full compliance with August 20, 2021 Order." Dkt. No. 61 at 17.

Thus, as of today, a trial will likely not begin (if at all) until nearly one *decade* after the

inception of the case. These repeated postponements impede the Court's need to manage its docket, and the delays are attributable to plaintiffs' ongoing inability to comply with discovery requests. Thus, this factor weights in favor of dismissal. *See Lalau*, 938 F. Supp. 2d at 1008 (finding this factor "neutral" where "trial is set for next month, and the [defendant] does not show that that schedule is not within the normal range.").

**C.     Risk of prejudice to the defendants**. Because plaintiffs have still not produced key documentation related to their claims, such as damages, defendants may be prejudiced by the continued passage of time and the fading of witness memories. The most recent allegations in the SAC occurred in 2013. The earliest occurred in 2008. *See Morris*, 942 F.2d at 652 ("we may presume from the length of time that has elapsed between the events at issue here and the present, that [defendant's] ability to present its case has been prejudiced."). The risk of prejudice to defendants thus weighs in favor of dismiss.

**D.     Public policy favoring disposition of cases on their merits**. While this policy goal would generally not be served by dismissal, in this case, plaintiffs have repeatedly failed to substantiate the merits of their claims with documentation. Accordingly, this factor is neutral.

**E.     Availability of less drastic alternatives**. The Court has repeatedly attempted to "move [plaintiffs] into some kind of meaningful action." *Morris*, 942 F.2d at 652. In a hearing on April 30, 2021, the Court "instructed Plaintiff to produce all outstanding discovery documents and… warned the parties that if Plaintiff does not produce the discovery documents and Plaintiff's deposition does not occur the case may be dismissed for lack of prosecution." Dkt. No. 50. The Court again repeated its warning on August 20, 2021, when it instructed plaintiffs that if they did not comply fully with the Court's August 20, 2021 Order, dismissal with prejudice would be considered. Dkt. No. 59.

While Harmon's incarceration may have made it difficult to comply with production *at the time of the Court's order*, these obstacles were ostensibly removed in early November 2021 when

1    Harmon was released from prison. Yet, two months later, plaintiffs have not completed their
2    document production. Plaintiffs were aware that the Court would not entertain further extensions
3    and yet failed to comply even after Harmon was released. *See Henderson*, 779 F.2d at 1424
4    (affirming dismissal where the district court unambiguously "tried to warn counsel of the
5    consequences of his continuing dilatory preparation" at least three times and "attempted to solve the
6    problem by holding a status conference and establishing a schedule for discovery and preparation
7    of the Rule 42(c) order.").

Thus, these five factors considered in combination persuade the Court that dismissal for failure to prosecute is proper. However, the Court's dismissal will be without prejudice.

## II.    Statute of limitations

Although dismissal is without prejudice, the Court believes, but does not decide, that all fifteen of plaintiffs' causes of action would be barred by applicable statutes of limitations were plaintiffs to attempt to refile this lawsuit. California law treats an action dismissed without prejudice as if "no action has been brought" unless a statute specifies otherwise. *Wood v. Elling Corp.*, 20 Cal.3d 353, 359 (1977). Federal law is similar: "if the suit is dismissed without prejudice, meaning that it can be refiled, then the tolling effect of the filing of the suit is wiped out and the statute of limitations is deemed to have continued running from whenever the cause of action accrued, without interruption by that filing." *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000); *O'Donnell v. Vencor, Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006).

At the very latest, the claims alleged in the SAC accrued in 2013. The first three causes of action, as well as the tenth cause of action for civil conspiracy, sound in fraud for statements made between 2011 and 2013. SAC ¶ 52, 59, 65. The statute of limitations for an "action for relief on the ground of fraud or mistake" is three years from the date when the aggrieved party discovers the facts constituting the fraud or mistake. Cal. Civ. Proc. § 338(d). The fourth cause of action, breach of fiduciary duty, SAC ¶ 72, has a statute of limitations of four years. Cal. Civ. Proc. § 343. The fifth cause of action, breach of written contract, SAC ¶ 82, has a limitations period of four years. Cal. Civ. Proc. § 337. The sixth, eleventh, and twelfth, thirteenth, and fourteenth causes of action

(respectfully, unjust enrichment, SAC ¶ 85, constructive trust, SAC ¶ 107, accounting, SAC ¶ 111, and two claims for conversion, SAC ¶ 114-126) are all actions "for taking, detaining, or injuring goods or chattels, including an action for the specific recovery of personal property," which are subject to a three-year limitations period. Cal. Civ. Proc. § 338(c)(1). The seventh and eighth cause of action, intentional interference with contractual relations, has a two-year limitations period. Civ. Proc. Code § 339(1). The ninth cause of action for unfair competition has a limitations period of four years. Cal. B.P.C. § 17208. Finally, the fifteenth cause of action for Civil RICO under 18 USC § 1962(c) has a limitations period of four years. *See Pincay v. Andrews*, 238 F.3d 1106, 1108 (9th Cir. 2001).

The parties have not entered into a tolling agreement in this case. Because plaintiffs have not diligently prosecuted the case, the Court also find it inappropriate to grant equitable tolling. S*ee, e.g., Porter v. S. Nevada Adult Mental Health Servs*., 2017 WL 6379525 at *6 (D. Nev. Dec. 13, 2017), aff'd, 788 F. App'x 525 (9th Cir. 2019) (observing that "where a dismissal without prejudice becomes 'tantamount to a dismissal with prejudice because of the expiration of the statute of limitations,' tolling could be warranted," but ultimately declining to equitably toll the statute). Accordingly, while plaintiffs may refile, a court may hold that the statutory period began to run as early as 2010 and therefore the claims are time-barred.

### III. Motion to withdraw

The Court will permit Ms. Cazzell to withdraw on the basis of nonpayment of fees and a breakdown of the attorney-client relationship. Because Ms. Cazzell's withdrawal is not accompanied by the simultaneous appearance of substitute counsel, leave to withdraw is subject to the condition that papers will continue to be served on Ms. Cazzell until (1) Harmon obtains new counsel or appears *pro se*, and (2) ISE obtains new counsel. Civil Local Rule 11-5(b). Ms. Cazzell is instructed to notify the parties of her conditional withdrawal within one week of the entry of this Court's Order.

**CONCLUSION**

For the reasons discussed above, the Court hereby **GRANTS IN PART** defendant's motion to dismiss for failure to prosecute and **GRANTS** plaintiff counsel's motion to withdraw. Case dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: January 27, 2022

_____
SUSAN ILLSTON
United States District Judge